UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | | |
|---|---|---|---|
| JORGE CIGARROA, | § | | |
| *Plaintiff,* | § | | |
| | § | | |
| vs. | § | CAUSE NO. _____ | |
| | § | | |
| CITY OF LAREDO, SERGIO FLORES, | § | | |
| AND LUIS FERDIN, | § | | |
| *Defendants.* | § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW JORGE CIGARROA, hereinafter called Plaintiff, complaining of and about City of Laredo, Sergio Flores and Luis Ferdin hereinafter called Defendants, and for causes of action would respectfully show unto the Court the following:

### I.       JURISDICTION AND VENUE

1.       The Court has original jurisdiction over this matter based on a federal question under 28 U.S.C. § 1441(b) as it is a suit to redress the Defendants' deprivation of the Plaintiff's civil rights under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3) and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

### II.      VENUE

2.       Venue is proper in this district and division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this district and within this division.

### III.      PARTIES AND SERVICE

3.       Plaintiff Jorge Cigarroa is an individual citizen and lifetime resident of the City of Laredo, Webb County, Texas.

4.      Defendant City of Laredo is a home rule city duly organized and existing under the laws of the State of Texas.  It may be served with summons by serving the City Secretary for the City of Laredo at City Hall, 1110 Houston Street, 3rd Floor, Laredo, Texas 78040.

5.      Defendant Sergio Flores is a resident of Webb County, and may be served with summons at 4712 Maher Ave, Laredo, Texas 78041 or wherever he may be found.

6.      Defendant Luis Ferdin is a resident of Webb County, and may be served with summons in this cause at 4712 Maher Ave, Laredo, Texas 78041 or wherever he may be found.

## IV.      FACTS

7.      This is a suit for unlawful arrest, the use of excessive force, and damages sustained in a traffic stop in which the Plaintiff was falsely arrested and brutally assaulted.

### A.      Mr. Cigarroa is subjected to police brutality.

8.      Jorge Cigarroa is a 63-year-old lifetime resident of Laredo, Texas.  He is married with three adult daughters who were born and raised in Laredo.  He is a licensed customs broker and has owned and operated a family business, Cigarroa Dispatch, Inc., for over thirty-five years.  Prior to the events in question, Mr. Cigarroa had never been arrested or charged with any offense other than minor traffic tickets.

9.      On the morning of April 22, 2022, Mr. Cigarroa was at the gym when his wife called to tell him that her mother, Mr. Cigarroa's mother-in-law, had just passed away at her home at 309 Rhone Lane in Laredo. His wife was at her mother's side when she passed away and was very emotional. Without showering or changing clothes, Mr. Cigarroa jumped into his truck to rush to his mother-in-law's house to be at his wife's side. In his rush to get to his mother-in-law's house, Mr. Cigarroa may have committed a moving violation, but he caused no collision and endangered no one. The officers who subsequently beat and arrested Mr. Cigarroa did not even cite him for the moving violation.

10.     Driving west on Calle del Norte, Mr. Cigarroa saw a police car in his rearview mirror about two blocks behind him, with its lights flashing. Mr. Cigarroa pulled over and waited for the police car to pull up behind him. He then exited his truck and approached the police car to tell the officers that his mother-in-law had just passed away, and that he was on his way to comfort his grieving wife. He pointed to her house, which was visible from the police car, and asked if they would follow Mr. Cigarroa the short distance to her house. The officer, who Mr. Cigarroa later learned was Luis Ferdin, ignored his request and told him to move his truck into a nearby parking lot, which he promptly did. Officer Luis Ferdin followed Mr. Cigarroa into the parking lot and parked behind his truck.

11.     License in hand, Mr. Cigarroa exited his truck and approached the driver side of the police car. Officer Ferdin exited, they met between the vehicles, and Mr. Cigarroa gave him his driver's license. Mr. Cigarroa repeated that his mother-in-law had just died and that her home was very close. He again asked if the officers would follow him to her house. The second officer, who Mr. Cigarroa later learned was Field Training Officer ("FTO") Sergio Flores, said "No," and instructed Mr. Cigarroa to walk to the police car.

12.     As Mr. Cigarroa was following FTO Flores' direction and walking to the police car, with no provocation FTO Flores grabbed Mr. Cigarroa's left arm and shoved him, cursing him, and ordering him to put his hands on the police car. Upset by his mother-in-law's death, by the officers' refusal of the simple courtesy of escorting him a few blocks so he could be by his wife's side, and by being cursed at by a peace officer, Mr. Cigarroa continued to comply with the officer's orders, but responded "Don't say a bad word to me, little guy." FTO Flores exploded at the perceived insult.

13.     With no physical provocation whatsoever and in retaliation for Mr. Cigarroa's comment, FTO Flores struck Mr. Cigarroa on his back so hard he felt his spine crack from bottom to top. FTO Flores then shoved Mr. Cigarroa against the police car, wrapped his arm around Mr. Cigarroa's shoulders, and put all of his weight on Mr. Cigarroa while still holding his arm. FTO Flores then ordered Mr.

Cigarroa to put his hands behind his back, which he could not do because FTO Flores was leaning against Mr. Cigarroa from behind with the weight of his body pressing against Mr. Cigarroa's back and arms, preventing him from complying with FTO Flores' order.

14.     When Mr. Cigarroa said he was doing nothing wrong – again with no physical provocation whatsoever – FTO Flores shoved Mr. Cigarroa forward and then yanked him back forcefully, in an effort to throw him to the ground.

15.     When Mr. Cigarroa said that his hands were now behind his back (the weight finally being taken off), instead of applying handcuffs, FTO tried to smash Mr. Cigarroa's head into the police car and twisted his arm upward with significant force.

16.     When Mr. Cigarroa then said he was going to call his lawyer and again referred to his mother-in-law, FTO Flores jerked Mr. Cigarroa's arm up so hard he thought it would be dislocated from his shoulder.

17.     Nearly paralyzed with pain – but again making no physical provocation – Mr. Cigarroa cursed at FTO Flores. In retaliation, instead of simply applying handcuffs, FTO Flores used all his strength to flip Mr. Cigarroa around and throw him to the concrete. While Mr. Cigarroa was on the ground, FTO Flores kicked him in the back with his knee with full force and jumped up and down on him several times. FTO Flores then used a hard object, apparently a baton, and hit Mr. Cigarroa so loud that the sound was picked up on the iPhone of a witness inside a building next to the parking lot.

18.     After striking Mr. Cigarroa with his baton, FTO Flores then kneeled on his neck and ground his head into the concrete, restricting his air passage, even though by that time Mr. Cigarroa was in handcuffs.

19.     Officer Ferdin witnessed FTO Flores' unprovoked aggression against Mr. Cigarroa in its entirety but said and did nothing to stop the beating.

20.     The officers then proceeded to search – ransack, in fact – Mr. Cigarroa's truck without requesting or obtaining Mr. Cigarroa's consent.  For instance, the officers removed the tools from Mr. Cigarroa's toolbox and threw them onto the floor, for no reason whatsoever.  The officers had no probable cause or even a reasonable suspicion to believe that his truck contained evidence of criminal activity.  Mr. Cigarroa was stopped for a simple moving violation, which does not justify the search of a vehicle.  Mr. Cigarroa was (falsely) arrested for resisting arrest while the officers were detaining him and beating him next to their police car, away from his truck, which was not within his reach.  The officers lacked any reason to believe that Mr. Cigarroa's truck contained any evidence of any crime.

21.     FTO Flores and Officer Ferdin arrested Mr. Cigarroa and took him to be booked, which took until 2:45 pm. In an apparent attempt to cover up Mr. Cigarroa's unlawful beating, he was falsely charged with resisting arrest, evading arrest and resisting search. Once FTO Flores was gone, Officer Ferdin apologized to Mr. Cigarroa for the way he had been treated, apparently feeling belated guilt for the unprovoked assault he had witnessed and done nothing to stop.

22.     The officers' beating left Mr. Cigarroa with high blood pressure, in pain, soreness to his body in general and bruised all over his body. Because of his unlawful arrest, Mr. Cigarroa was unable to comfort his grieving wife at the time of her greatest need. And, because the conditions of his pretrial release for this unlawful arrest which prevented him from travelling out of town, Mr. Cigarroa was unable to attend the funeral of his mother-in-law in Nuevo Laredo, Mexico.

23.     All charges against Mr. Cigarroa were not accepted for prosecution and dismissed.

        **B.      The whitewash and the cover-up.**

24.     FTO Flores and Officer Ferdin filed a false police report in an effort to cover-up their wrongdoing, not knowing that a bystander had videoed their actions from the building next to the parking lot and also a building surveillance video captured the incident.

25.     In a further attempt to justify the unnecessary force used to grab Mr. Cigarroa, the report claims that Mr. Cigarroa disregarded Officer Ferdin's verbal command "and walked towards his vehicle driver's side door in an attempt to get inside his vehicle," and that he "grabbed Mr. Cigarroa by one of his arms and escorted him to the hood of the marked patrol car." This is false. The building surveillance video shows that no such thing happened. In fact, Mr. Cigarroa obeyed the officer's command and walked, voluntarily and unescorted, to the police vehicle.

26.     In an attempt to justify the unnecessary force used to restrain and handcuff Mr. Cigarroa, the report claims, "As soon as I was going to properly handcuff Mr. Cigarroa he intentionally, knowingly and forcibly tucked both of his arms against his upper body to avoid being detained." Again, this is false. The bystander's video shows that Mr. Cigarroa did no such thing, and that he put his hands on the police car when instructed.

27.     In an attempt to justify throwing Mr. Cigarroa to the ground and beating him, the report claims that "Mr. Cigarroa was not obeying verbal commands, so I had to use the necessary force to subdue him." Yet again, this is false, and is disproven by the bystander's video and building surveillance video. Both videos show that FTO Flores sucker-punched Mr. Cigarroa while his hands were on the police car, and that Officer Ferdin did not attempt to restrain Mr. Cigarroa until after FTO Flores began physically assaulting hm.

28.     Counsel for Mr. Cigarroa submitted a written complaint to Internal Affairs at the Laredo Police Department on May 20, 2022, describing in detail the officers' misconduct, false arrest, and brutality. Despite having access to the FTO Sergio Flores body cam video, bystander video and building video, the Laredo Police Department shockingly found "no violation" of any police procedures in the treatment of Mr. Cigarroa claiming that FTO Flores and Officer Ferdin acted according to the department's policies and practices.

29.     Plaintiff's **JORGE CIGARROA** bodily injuries occurred as a direct result of the incident that was proximately caused by the actions and dangerous condition and violations of Plaintiff's Civil Rights as described above, which Defendants knew, or in the exercise of ordinary care, should have known existed.

30.     This action for money damages is against the City of Laredo and Police Officer, Defendants for violations of the plaintiff's constitutional rights. Plaintiff will show that Defendants unlawfully and without cause assaulted and falsely imprisoned the plaintiff in violation of his constitutional rights. In addition, the City of Laredo breached their duty to enforce the law by failing to stop the individual(s) and/or fellow officer(s) who assaulted the plaintiff and/or arrest the individual(s) and/or officer(s) who did brutally assault Plaintiff while he was handcuffed.

**V.      VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983, Texas Constitution Art. I §9**

31.     Plaintiff alleges, asserts and incorporates verbatim the facts, averments and denials in the preceding paragraphs.

32.     The actions of the Defendants as set out above constitute a clear violation of the Plaintiff's rights to be free from (1) excessive, unreasonable, and unnecessary force as secured by the Fourth and Fourteenth Amendments to the United States Constitution; (2) unreasonable searches and seizures as secured by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution; and (3) retaliation for exercising his right to free speech as secured by the First Amendment to the United States Constitution, made actionable by the Civil Rights Act of 1871, now codified in 42 U.S.C. § 1983, as well as Article I section 9 of the Texas Constitution.

33.     The individual officers' conduct described above violated Mr. Cigarroa's clearly established rights to be free from (1) excessive, unreasonable and unnecessary force under the Fourth and Fourteenth Amendments; (2) unreasonable searches and seizures under the Fourth,

Fifth, and Fourteenth Amendments; and (3) retaliation for exercising his right to free speech under the First Amendment.

34.    The officers' violations of Mr. Cigarroa's constitutional rights described above reflected, stemmed from, and were consistent with the City of Laredo's law enforcement policies and practices at the time they occurred.  This is confirmed by the fact that one of the participating officers was a Field Training Officer, responsible for training new police officers in the policies and practices of the Laredo Police Department.  Further, the City of Laredo ratified the officers' violations of Mr. Cigarroa's constitutional rights after they occurred by rejecting Mr. Cigarroa's Internal Affairs complaint and determining that the officers' actions did not violate, and were consistent with, the City's policies and practices, as confirmed in Laredo Police Chief Treviño, Jr.'s letter of October 12, 2022.

## VI.    VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS

35.    Plaintiff re-alleges and reasserts verbatim the facts, averments and denials in the proceeding's paragraphs.

36.    The foregoing facts show that the Defendant, City of Laredo, Texas and the other Defendants in their official capacities violated the Plaintiff's Constitutional Rights as enumerated in the Texas Constitution, Article 1, Sections 8 and 19.

37.    Plaintiff seeks declaratory relief for the violation of his rights pursuant to 28 U.S.C. §§ 2201-02.

38.    Plaintiff seeks a declaratory judgment that the Defendant, City of Laredo, Texas and the individually named Defendants in their official capacities violated the Plaintiff's rights as enumerated in the First, Fourth, Fifth, and Fourteenth amendments to the U.S. Constitution and the Texas Constitution, Article 11, Sections 8 and 19.

39.     Plaintiff seeks relief pursuant to Amendments I, IV, V, and XIV of the United States Constitution as well as pursuant to 42 U.S.C. §1983, et. seq.

40.     Plaintiff seeks monetary and declaratory relief as outlined below, including but not limited to money damages and attorney's fees, and pursuant to 42 U.S.C.§§ 1983 & 1988.

### VII.    DAMAGES FOR PLAINTIFF, JORGE CIGARROA

41.     As a direct and proximate result of the occurrence made the basis of this lawsuit, and Defendant acts as described herein, Plaintiff, Jorge Cigarroa, was caused to suffer severe injuries to his head, arms and lower back, and to endure anxiety, pain and illness resulting in damages of at least three million dollars ($3,000,000.00).

42.     As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff Jorge Cigarroa has incurred the following damages:

      a)     As a direct and proximate result of the unlawful actions of the Defendant, the Plaintiff Jorge Cigarroa has suffered actual damages including but not limited to: (1) physical pain and suffering; (2) mental anguish in the past and future; and (3) humiliation, shame, and embarrassment in the past and future.

      b)     Because the officer Defendants acted with malicious or evil intent and/or in callous disregard of Mr. Cigarroa's federal rights, Plaintiff requests an award of exemplary damages against those Defendants jointly and severally in their individual capacities.

### VIII.    JURY DEMAND

43.     Plaintiff demands a trial by Jury and has tendered the jury fee.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, pray that all Defendant be cited

to appear and answer, and that upon final judgment, Plaintiff have the following:

    a.  Judgment against Defendants jointly and severally for the actual damages caused the Plaintiff as set forth herein (at least $3,000,000.00);

    b.  An award of exemplary and punitive damages against each of the officer Defendants in their individual capacities;

    c.  Pre-judgment and post-judgment interest at the legal rate until paid;

    d.  Costs of court;

    e.  Attorneys' fees; and

    f.  Any and all such other and further relief, at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

Craig A. Lawrence
Attorney at Law, P.C.
6999 McPherson Rd, Suite 325
North Town Professional Plaza
Laredo, Texas 78041
956-717-1961-Tel
956-717-2789 facsimile

By: _____

**CRAIG A. LAWRENCE**
State Bar No. 12033900
craiglawlaredo@sbcglobal.net
**ATTORNEY FOR PLAINTIFF**
**JORGE CIGARROA**